*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* THOMAS, Minor.

UNPUBLISHED
April 21, 2022

No. 358210
Wayne Circuit Court
Family Division
LC No. 2021-000372-NA

Before: JANSEN, P.J., and SAWYER and RIORDAN, JJ.

PER CURIAM.

Respondent-father[1] appeals as of right the order terminating his parental rights to ADT under MCL 712A.19b(3)(b)(*i*) (parent's act caused sexual abuse and likelihood that child may suffer in foreseeable future if placed in parent's home); (j) (reasonable likelihood, child will be harmed if she is returned to the parent's home); (k)(*ii*) (criminal sexual conduct involving penetration or attempted penetration); and (k)(*ix*) (sexual abuse of a child). We affirm.

## I. BACKGROUND

In December of 2020, Child Protective Services (CPS) received a complaint regarding allegations of sexual abuse brought by MMW, the half-sister of ADT, against respondent-father. MMW alleged that on February 3, 2020, MMW was in ADT's bedroom with her baby cousin. It was dark out, and MMW was watching television while half asleep, and on the bed when respondent-father entered the room. Although there were no lights on in the room, the television light provided enough brightness to allow MMW to identify respondent-father. MMW alleged that she was wearing shorts or leggings at the time, and she only opened her eyes "a little bit," so she did not believe that respondent-father knew MMW was awake. Respondent-father put his hand up MMW's leggings or shorts from the bottom and touched her, under her underwear, on "the part where [MMW] pees from[.]" MMW did not speak at all, and after respondent-father touched MMW, he left the room. At some point, MMW fell back asleep. At the time of the

---

[1] ADT's mother is not involved in this appeal and was not a respondent in the trial court proceedings.

incident, respondent-father lived with MMW, ADT, and their mother, T. Thomas, but respondent-father moved out in March of 2020.

MMW did not tell Thomas about the incident until December of 2020, when MMW overheard Thomas speaking with her brother about respondent-father moving back into the house. After MMW told Thomas about the incident, Thomas reported it to Officer Laura Moltalto of the Detroit Police Department, who reported it to CPS. CPS specialist Ladawn Moore was the initial investigator, but the case was transferred to CPS specialist Roxanne Clark, who investigated the allegations for about two months. The investigation included interviews with Thomas and respondent-father, review of the records of petitioner, the Michigan Department of Health and Human Services (DHHS), and contacts with the Children's Hospital of Michigan and Officer Moltalto. Clark also arranged for ADT and MMW to undergo a Kids' Talk interview with Stephanie Green, which was completed on March 22, 2021.

As a result of MMW's allegations and CPS's investigation, DHHS filed a petition requesting that the trial court issue an order removing ADT from the home and terminating respondent-father's parental rights. Throughout the pendency of the proceedings, ADT remained in the care of Thomas. The adjudication hearing was held on June 17, 2021, and continued on July 13, 2021. The initial dispositional hearing was also held on July 13, 2021, and the trial court terminated respondent-father's parental rights under MCL 712A.19b(3)(b)(*i*), (j), (k)(*ii*), and (k)(*ix*). MMW testified at adjudication, and the trial court determined that MMW's testimony was "clear, convincing credible, unequivocal and uncontroverted." On the basis of MMW's testimony, the trial court found that respondent-father sexually abused MMW, and ADT was at risk of foreseeable harm if respondent-father continued to exercise his parental rights. Finally, the trial court determined that termination was in ADT's best interests.

## II. PRESERVATION AND STANDARD OF REVIEW

To preserve an argument regarding the adequacy of services provided to a respondent-parent, the parent must "object or indicate that the services provided to them were somehow inadequate." *In re Frey*, 297 Mich App 242, 247; 824 NW2d 569 (2012). In the trial court, respondent-father did not argue the services provided to him were inadequate. Thus, this argument is unpreserved for appeal. *Id*. In addition, respondent-father appears to assert a violation of his constitutional right to a fundamentally fair procedure because the trial court erred in terminating his parental rights. In the trial court, respondent-father never objected to the trial court's termination of parental rights on the basis of a constitutional violation. Thus, this argument also is unpreserved for appeal. *Id*.

We review unpreserved issues for plain error. *In re VanDalen*, 293 Mich App 120, 135; 809 NW2d 412 (2011). To establish an entitlement to relief on the basis of plain error, "three requirements must be met: 1) the error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Id*. (quotation marks and citation omitted). "[A]n error affects substantial rights if it caused prejudice, i.e., it affected the outcome of the proceedings." *In re Utrera*, 281 Mich App 1, 9; 761 NW2d 253 (2008).

This Court reviews for clear error whether the trial court properly found statutory grounds for termination, and whether termination was in ADT's best interests. *In re Williams*, 286 Mich

App 253, 271; 779 NW2d 286 (2009). " 'A finding is "clearly erroneous" [if] although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made.' " *In re Rood*, 483 Mich 73, 91; 763 NW2d 587 (2009), quoting *In re Miller*, 433 Mich 331, 337; 445 NW2d 161 (1989). "This Court gives deference to a trial court's special opportunity to judge the weight of the evidence and the credibility of the witnesses who appear before it." *In re TK*, 306 Mich App 698, 710; 859 NW2d 208 (2014).

## III. ANALYSIS

Respondent-father argues that the trial court erred when it found statutory grounds for termination and that termination was in ADT's best interests. Respondent-father also argues that DHHS failed to provide reasonable efforts to reunify ADT and respondent-father, and the trial court's termination violated respondent-father's constitutional rights. We disagree.

## A. REASONABLE EFFORTS

Respondent-father argues that DHHS failed to make reasonable efforts to reunite respondent-father with ADT. DHHS is generally required to make reasonable efforts to reunify the child and parent "unless certain aggravating circumstances exist." *In re Moss*, 301 Mich App 76, 91; 836 NW2d 182 (2013), citing MCL 712A.19a(2). However, DHHS is "not required to provide reunification services when termination of parental rights is the agency's goal." *In re HRC*, 286 Mich App 444, 463; 781 NW2d 105 (2009), citing *In re Terry*, 240 Mich App 14, 25 n 4; 610 NW2d 563 (2000). Further, under MCL 722.638(1)(a)(*ii*), DHHS must seek termination of parental rights "when the parents are suspected of perpetuating sexual abuse upon the minor children or their siblings." *In re HRC*, 286 Mich App at 463.

MCL 722.638(1)(a)(*ii*) states:

> (1) The department shall submit a petition for authorization by the court under section 2(b) of chapter XIIA of 1939 PA 288, MCL 712A.2, if 1 or more of the following apply:

>> (a) The department determines that a parent, guardian, or custodian, or a person who is 18 years of age or older and who resides for any length of time in the child's home, has abused the child or a sibling of the child and the abuse included 1 or more of the following:

>> * * *

>>> (*ii*) Criminal sexual conduct involving penetration, attempted penetration, or assault with intent to penetrate.

Moreover, MCR 3.977(E) requires termination at initial disposition if certain circumstances are met:

> The court shall order termination of the parental rights of a respondent at the initial dispositional hearing held pursuant to MCR 3.973, and shall order that

additional efforts for reunification of the child with the respondent shall not be made, if

> (1) the original, or amended, petition contains a request for termination;

> (2) at the trial or plea proceedings, the trier of fact finds by a preponderance of the evidence that one or more of the grounds for assumption of jurisdiction over the child under MCL 712A.2(b) have been established;

> (3) at the initial disposition hearing, the court finds on the basis of clear and convincing legally admissible evidence that had been introduced at the trial or plea proceedings, or that is introduced at the dispositional hearing, that one or more facts alleged in the petition:

>> (a) are true, and

>> (b) establish grounds for termination of parental rights under MCL 712A.19b(3)(a), (b), (d), (e), (f), (g), (h), (i), (j), (k), (l), or (m);

> (4) termination of parental rights is in the child's best interests.

In its petition, DHHS sought termination of respondent-father's parental rights because a sibling of ADT suffered sexual abuse by respondent-father, and there was a reasonable likelihood ADT would be harmed if respondent-father continues to exercise his parental rights, among other grounds. At the adjudication hearing, the trial court found that "there [was] a preponderance of evidence on this record for the court to find that the child [ADT] comes within the jurisdiction of the juvenile code." Specifically, on the basis of MMW's and Clark's testimony, the trial court found that respondent-father sexually abused MMW, and there were statutory grounds to exercise jurisdiction over ADT. The trial court made similar findings when it held that DHHS established statutory grounds for termination.

The trial court considered the testimony admitted at the adjudication hearing. The trial court noted that respondent-father sexually abused MMW, who is ADT's half-sibling, and thus, there was a reasonable likelihood ADT would suffer injury in the foreseeable future if she returned to the care of respondent-father. Further, the trial court determined that the sexual abuse of MMW satisfied the definition of sexual abuse "as that term is defined in section two of the child protection law." Thus, the trial court found that DHHS established, by clear and convincing evidence, grounds to terminate respondent-father's parental rights under MCL 712A.19b(3)(b)(*i*), (j), (k)(*ii*) and (k)(*ix*). The trial court also found that termination was in ADT's best interests. Thus, all the conditions of MCR 3.977(E) were met, and under MCL 712A.19a(2)(a), DHHS was not required to make reasonable efforts to reunite respondent-father with ADT. Accordingly, there was no error, much less plain error, by the alleged lack of reunification efforts by DHHS. *In re VanDalen*, 293 Mich App at 135.

## B. TERMINATION

Respondent-father argues that the trial court erred in terminating his parental rights because the trial court failed to consider the Kids' Talk interview in determining whether statutory grounds for termination existed.

MCL 712A.17b(5) states videorecorded statements of a witness "shall be admitted at all proceedings except the adjudication stage instead of the live testimony of the witness." "MCL 712A.17(b)(5) requires a trial court to admit videorecordings of a child's forensic interview during a nonadjudicatory stage." *In re Brown*, 305 Mich App 623, 632; 853 NW2d 459 (2014). Respondent-father argues that the trial court erred in refusing to review MMW's Kids' Talk interview. Respondent-father is correct to the extent that the trial court refused to admit the evidence during the dispositional phase of the July 13, 2021 hearing; however, the trial court did not err in refusing to admit the Kids' Talk digital video disc (DVD) during the adjudication hearing. Under the plain language of MCL 712A.17(b)(5) and *In re Brown*, the trial court could not consider the Kids' Talk interview for purposes of adjudication. However, it was required to admit the DVD into evidence in the dispositional phase of the hearing because that is a "nonadjudicatory stage." See MCL 712A.17(b)(5). Thus, the trial court erred in refusing to admit the Kids' Talk DVD during the nonadjudicatory stage of the proceedings, but for the reasons explained below, the error was harmless.

Respondent-father sought to use the Kids' Talk DVD to impeach MMW's testimony, arguing that there were inconsistencies between MMW's testimony and MMW's Kids' Talk interview. However, MMW testified in person at adjudication, and respondent-father had an opportunity to impeach MMW's testimony because respondent-father viewed the Kids' Talk interview before adjudication, and he cross-examined MMW at the hearing. Many of the alleged inconsistences were explored on cross-examination. Specifically, respondent-father inquired about alleged discrepancies between the reported date of the incident, but MMW clearly stated that she informed Green that the date of the incident was February 3, 2020, not January 3, 2020. Respondent-father also noted that MMW's testimony was different from her Kids' Talk interview in that MMW allegedly stated that she was asleep during the sexual abuse incident in the Kids' Talk interview, but during the adjudication she stated that she was half asleep.

Because respondent-father had an opportunity to address the inconsistencies on cross-examination and actually did so, the trial court's error in refusing to admit the Kids' Talk DVD during the dispositional stage of the hearing was harmless and does not warrant reversal. See *In re Brown*, 305 Mich App at 634 (determining that the trial court's refusal to admit Kids' Talk videorecordings into evidence did not warrant reversal because the alleged inconsistencies between the recordings and the witness's testimony was explored on cross-examination).

Moreover, there is clear and convincing evidence that at least one statutory ground for termination of parental rights existed. The trial court terminated respondent-father's parental rights under MCL 712A.19b(3)(b)(*i*), (j), (k)(*ii*) and (k)(*ix*), but the trial court needed "clear and convincing evidence of only one statutory ground to support its termination order." *In re KMP*, 244 Mich App 111, 118; 624 NW2d 472 (2000).

Under MCL 712A.19b(3)(k)(*ix*), the trial court may terminate a respondent's parental rights when the respondent engaged in "sexual abuse" of the child or the child's sibling, and "there is a reasonable likelihood that the child will be harmed if returned to the care of the parent." MCL

-5-

722.622(z) defines sexual abuse as "engaging in sexual contact or sexual penetration as those terms are defined in . . . MCL 750.520a, with a child." Relatedly, MCL 750.520a defines sexual contact and sexual penetration as:

> (q) "Sexual contact" includes the intentional touching of the victim's or actor's intimate parts or the intentional touching of the clothing covering the immediate area of the victim's or actor's intimate parts, if that intentional touching can reasonably be construed as being for the purpose of sexual arousal or gratification, done for a sexual purpose, or in a sexual manner. . . .

> (r) "Sexual penetration" means sexual intercourse, cunnilingus, fellatio, anal intercourse, or any other intrusion, however slight, of any part of a person's body or of any object into the genital or anal openings of another person's body, but emission of semen is not required. [MCL 750.520a(q), (r).]

On the basis of MMW's testimony, the trial court found that there was clear and convincing evidence respondent-father sexually abused MMW, which was the basis for several grounds for termination at the initial dispositional hearing as aggravating circumstances. Specifically, the trial court noted MMW's testimony was "convincing, credible, unequivocal and uncontroverted." This Court gives deference to the trial court's determinations regarding the credibility of witnesses who appear before it. *In re TK*, 306 Mich App at 710. Respondent-father, in contrast, provided no witnesses and no evidence that the allegations were false. Although respondent-father indicated that there were "material" inconsistencies between MMW's testimony and her Kids' Talk interview, the only inconsistencies respondent-father noted on the record were immaterial, and given MMW's young age, inconsistencies are not uncommon. Simply put, MMW's description of the manner of the sexual abuse remained generally consistent in her Kids' Talk interview and testimony. The trial court did not clearly err by finding that respondent-father sexually abused MMW for the purposes of MCL 712A.19b(k)(*ix*) because he engaged in "sexual contact" with her. See MCL 750.520a(q).

The trial court also found that, because respondent-father sexually abused ADT's half-sibling, there was a reasonable likelihood ADT would suffer injury in the foreseeable future if she remained in respondent-father's care. See *In re Kellogg*, 331 Mich App 249, 259; 952 NW2d 544 (2020) (citation omitted) (explaining that the trial court may infer "a parent's treatment of one child is probative of how that parent may treat other children."). Given that MMW was about the same age as ADT, this finding was not clearly erroneous. In other words, because respondent-father sexually abused one young child in his care, it was reasonable to infer that he was reasonably likely sexually abuse ADT, another young child, if she similarly was left in his care. Therefore, the trial court did not clearly err by finding that a statutory ground for termination existed under MCL 712A.19b(k)(*ix*).[2]

---

[2] MCL 712A.19b(k)(*ix*) provides that termination is warranted when "[t]he parent abused the child or a sibling of the child," the abuse included "[s]exual abuse as that term is defined in [MCL 722.622]," and "there is a reasonable likelihood that the child will be harmed if returned to the

## C. BEST INTERESTS

Respondent-father contends that termination of his parental rights was not in ADT's best interests. In determining whether termination is in a child's best interests, " '[t]he focus . . . has always been on the child, not the parent.' " *In re Payne/Pumphrey/Fortson Minors*, 311 Mich App 49, 63; 874 NW2d 205 (2015) (brackets omitted), quoting *In re Moss*, 301 Mich App at 87. Moreover, "[b]est interests are determined on the basis of the preponderance of the evidence." *In re LaFrance Minors*, 306 Mich App 713, 733; 858 NW2d 143 (2014). Specifically, this analysis considers:

> [T]he child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality . . . the length of time the child was in care, [and] the likelihood that the child could be returned to her parents' home within the foreseeable future, if at all. [*In re Payne/Pumphrey/Fortson Minors*, 311 Mich App at 63-64 (quotation marks and citations omitted).]

The trial court found that termination was in ADT's best interests because respondent-father sexually abused MMW, and ADT needed to be "protected from what the court deems to be a foreseeable risk of [ADT's] being sexually abused if returned to the care of [respondent-father]." The trial court noted that termination would not be for adoption because ADT would remain in Thomas's care. According to the trial court, that fact "weighs against a finding that termination of parental rights is in the best interests of [ADT]." However, the trial court further considered ADT's young age, as she was seven years' old at the time of the hearing; respondent-father's sexual abuse of MMW; and the foreseeable risk of harm to ADT, which weighed in favor of termination. We agree with these findings. Given that respondent-father sexually abused MMW and showed no remorse or even acknowledgement for having done so, and given that ADT would have been left in a similarly vulnerable position as MMW if respondent-father retained his parental rights to her, there is no clear error in the trial court's finding that termination of his parental rights to ADT was in ADT's best interests. *In re Payne/Pumphrey/Fortson Minors*, 311 Mich App at 63.

## D. DUE PROCESS

Finally, respondent-father argues the trial court's termination of his parental rights violated his due-process rights to a fair procedure. "A natural parent has a fundamental liberty interest in the care, custody, and management of his child that is protected by the Fourteenth Amendment of the United States Constitution and by article 1, § 17, of the Michigan Constitution." *In re Rood*, 483 Mich at 91 (quotation marks and citations omitted). "At the statutory-grounds stage in a termination proceeding, the child and the parent share a vital interest in preventing erroneous termination of their natural relationship until the petitioner proves parental unfitness." *In re Moss*, 301 Mich App at 87 (quotation marks and citation omitted). Accordingly, the hearing regarding whether there are statutory grounds to terminate parental rights "focuses on the liberty interest of the parent, [and] uses error-reducing procedures, such as the heightened standard of proof of clear

---

care of the parent." Because we conclude that the trial court did not clearly err by finding that a statutory ground for termination existed under MCL 712A.19b(k)(*ix*), we need not address the remaining statutory grounds for termination identified by the trial court.

and convincing evidence to prevent the erroneous determination that a fit parent is unfit." *In re Gach*, 315 Mich App 83, 99; 889 NW2d 707 (2016) (quotation marks and citation omitted).

Respondent-father asserts that his constitutional rights were violated because the trial court clearly erred when it concluded there was a statutory basis to terminate his rights. Accordingly, respondent-father relies on his arguments concerning the statutory grounds for termination, to contend the trial court's decision also amounted to a constitutional violation. For the reasons we enumerated in response to respondent-father's arguments regarding the statutory bases for termination, we also reject respondent-father's constitutional argument. Moreover, "[p]rocedural due process requires notice and a meaningful opportunity to be heard before an impartial decision-maker." *In re TK*, 306 Mich App at 706, citing *In re Rood*, 483 Mich at 92. Respondent-father was provided notice of the petition in the form of attempted personal service, certified mail, and publication, and was given the opportunity to attend a preliminary hearing, pretrial hearing, adjudication, and dispositional hearing before an impartial referee. Because respondent-father was afforded notice and an opportunity to be heard, and because there was clear and convincing evidence to support the trial court's termination of respondent-father's parental rights, respondent-father was not deprived of due process.

## IV. CONCLUSION

There were no errors warranting relief. We affirm.

/s/ Kathleen Jansen
/s/ David H. Sawyer
/s/ Michael J. Riordan

-8-